[No. 3347.]

KING SOLOMON TUNNEL AND DEVELOPMENT CO. v. MARY VERNA MINING CO.

1. BILL OF EXCEPTIONS—*Requisites.* A bill of exceptions taken in the trial of a cause which involves a question of boundaries should set forth the plats which were used and referred to in the trial court, even though the ground in contention is fully described by metes and bounds.

2. APPEALS—*Errors Assigned and Not Argued.* The rule that the court will not consider the sufficiency of the evidence where the bill of exceptions omits important documents used at the trial, e. g., plats of the ground in controversy; and the other rule that the court will not consider errors which are not discussed by counsel, are not inflexible. The substantial rights of the parties are not to be sacrificed to the inadvertencies or omissions of counsel.

Error in an instruction highly prejudicial to defendant considered, though counsel had entirely failed to call attention to it.

3. MINING CLAIMS—*Abandonment.* An amended location, the filing of a new location certificate, and the sinking of a new shaft, is not of itself an abandonment of the original location.

4. —— *Location—Discovery of Mineral—Evidence.* The question being as to the validity of the location of a lode claim, the opinion of an experienced miner that there was such a showing of vein and mineral in place that a reasonably prudent miner would expend his time in the development of the claim, is competent.

5. INSTRUCTIONS—*Error as to the Law—False Assumption of Fact.* An instruction which announces as the law what is not the law, or which assumes as proven what is not supported by the evidence, or withdraws from the jury an issue of fact exclusively within their province, involves fatal error.

6. EVIDENCE—*Opinions of Witnesses.* In a controversy as to a mining location it is error to receive the opinions of witnesses as to whether the ground was, at the time of the location, vacant and part of the public domain. The question is one for the jury upon evidence as to the actual developments there made.

7. —— *Objections to Evidence.* An objection to a question propounded, or evidence offered, should assign a clear and positive statement of the ground of objection.

An objection which fails to assign any ground of objection presents nothing for the consideration of the court of review.

So an objection to a question assigning as ground thereof that it is "incompetent, and calls for a conclusion."

8. DEED—*Mistake in Description.* The deed of a mining claim referring to the location certificate gave an erroneous reference to the place of the record. Held that evidence to explain this mistake should be introduced; though it was held that the admission of the deed without such explanation was not error.

*Appeal from Summit District Court.* HON. CHARLES CAVENDER, Judge.

Mr. GEORGE S. REDD, Mr. GEORGE STIDGER, for appellant.

Mr. J. T. HOGAN, for appellee.

HURLBUT, J.

This action was begun in the Summit county district court in support of an adverse claim, by

plaintiff below (appellee), against defendant (appellant).

The complaint alleges that on the 17th day of July, 1905, plaintiff was the owner of the Dollie Thompson, Kate Jackson, Tid-a-Wid, and Marguerite lodes; on June 30th, 1905, it was the owner of the Troublesome lode; all located in the Consolidated Ten Mile Mining District in Summit county, Colorado (for brevity these lodes hereinafter will be designated the Dollie Thompson group); that on April 14th, 1906, defendant ousted plaintiff from that part of said lodes in conflict with defendant's Survey Lot No. 17781, A and B, consisting of the Royal King Solomon No. 1, the Royal King Solomon No. 2, the Royal Queen of Sheba, the Royal Queen of Sheba No. 2, the Royal Queen of Sheba No. 3, the Royal Queen of Sheba No. 4, the Royal Queen of Sheba No. 5, the Royal Queen of Sheba No. 6, the Royal Queen of Sheba No. 7, and the Royal Queen of Sheba No. 8 lodes, as shown by exhibit B (hereinafter designated as the King Solomon group). The case was tried to a jury and verdict returned in favor of plaintiff for the ground in conflict. Trial was had December 17th, 1907.

This court would be warranted in refusing to consider any question concerning the rulings of the lower court in admitting or rejecting evidence at the trial, for the reason that none of the plats admitted in evidence have been incorporated in the bill of exceptions. The court has been hampered by not having such plats before it. There were four or five of them, all made from surveys of the ground by competent engineers, and showed the disputed premises in their various phases. It is well known to

the profession that such plats are helpful to the court in this class of cases and enable it to readily understand the situation as to controverted ground. It is true that each lode is fully described by metes and bounds, but in order to understand its relative situation to others, concerning ground in controversy, plats become very helpful. These plat exhibits could have been easily filed as originally admitted, or reduced copies thereof could have been made or photographed for the use of the court. In *Fugate v. Smith,* 4 Colo. C. A. 201, the court refused to decide whether or not the evidence warranted the verdict, for the reason that the plats admitted in evidence were not incorporated into the bill of exceptions. To the same effect is the case of *Diamond Block Coal Co. v. Cuthbertson,* (Ind. C. A.) 67 N. E. 558. The court there held that, notwithstanding the fact that the bill of exceptions recited that it contained all the evidence adduced at the trial, it would not pass on alleged errors in the admission or rejection of evidence, for the reason that plats used at the trial were not preserved in the bill of exceptions. Appellee also invokes the well established general rule that appellate courts will not consider errors assigned but not discussed in the printed briefs or on oral argument. Notwithstanding these general rules, we do not think they are, at all times and under all circumstances, inflexible. The appellate courts may in their discretion, and sometimes do, disregard the same, in order to prevent a miscarriage of justice. *Allen v. Tritch,* 5 Colo. 222; *Grotch v. Kersting,* 23 Colo. 213.

We think the substantial rights of litigants are of greater weight than the inadvertence or omissions

of their attorneys. We are satisfied that the record
here justifies the court in considering the same in
formulating its opinion, although the rule may have
been disregarded by appellant. We will concede
that appellant failed, both in its printed brief and
on oral argument, to discuss the eighth assignment
of error next hereinafter mentioned. This assign-
ment challenges the ruling of the court in giving
instruction number eleven to the jury. This was
palpable error and highly prejudicial to defendant,
and practically instructed it out of court. The in-
struction reads as follows:

"The court instructs the jury that if you be-
lieve from the evidence that the plaintiff and its
grantor made valid locations of the Kate Jackson,
Dollie Thompson, Tid-a-Wid, Marguerite and Trou-
blesome lode mining claims on the 15th day of July,
1905, or prior thereto, then your verdict will be for
the plaintiff for all or such of said claims as you
shall find have been properly located, regardless of
the locations made by defendant prior to September
12th, 1905; in other words, under the evidence in this
case, the defendant, by electing to sink new discovery
shafts and filing new location certificates, thereby
abandoned all locations made prior to the discovery
and location of September 24th, 1905, and are en-
titled to recover only upon their discovery and loca-
tions of that date."

This instruction commands the jury to dis-
regard any and all locations relied upon by defend-
ant if made prior to September 24th, 1905, and
further tells them that defendant abandoned all
locations made, or relied upon, by it prior to that
date, because it had elected to sink new shafts and

file new location certificates, when it made · the
amended location of September 12th, 1905. The
effect of this instruction was to confine defendant's
right of recovery to lodes discovered and located on
September 12th, 1905, and subsequent thereto. De-
fendant pleaded title to the disputed ground by dis-
covery and location antedating that of plaintiff by
several years. This was denied by plaintiff and
became a material issue in the case. If defendant,
by evidence, could have satisfied the jury that its
discoveries and· locations were valid, and prior to
those of plaintiff, it would have been entitled to a
verdict. That part of the instruction charging the
jury that defendant, by electing to sink new shafts
on its lodes previously located, and filing new loca-
tion certificates thereof, thereby abandoned all loca-
tions previously made, and could claim no rights
under such former locations, is new and novel as a
legal proposition. On the contrary, a multitude of
cases can be found in the printed reports repudiat-
ing that doctrine. ''Abandonment is a question of
fact, and the fact is to be found from the intention.''
Morrison, Mining Rights, 14th ed. p. 106, citing many
cases. It is a question of fact for the jury. *Mar-
shall v. Harney Peak Co.* (S. D.) 42 N. W. 290; *Tay-
lor v. Middleton,* 67 Calif, 656. It appears from the
evidence that defendant sunk new shafts on each of
the King Solomon group of lodes when it filed its
amended location certificates thereof. However, the
sinking of the new shafts and filing of amended loca-
tion certificates was subsequent to plaintiff's loca-
tion of the Dolly Thompson group, but each amended
location certificate of the King Solomon group
clearly stated that it was an amended location of the

lode, under the act of congress approved May 10th, 1872, and § 2409, general laws of Colorado, and that it made such amended location for the purpose of correcting any errors in the original location, and without waiver of any previously acquired rights. In filing these amended location certificates defendant was not required to discover a new vein or lode, sink any additional shaft, or make any new discoveries of mineral thereon. *Becker v. Pugh*, 17 Colo. 243; *Tonopah Co. v. Tonopah Co.*, 125 Fed. 390. The last case cited is an exhaustive and interesting opinion on the subject. If then, in making an amended location of the lodes, it was not necessary for defendant to sink an additional shaft or perform other acts of original discovery and location, it cannot be said that by so doing it abandoned or surrendered any rights previously acquired under the original locations. In this case the question as to whether or not defendant, by itself or grantors, had made valid locations of the King Solomon group of lodes in January, 1903, and had thereafter maintained its possessory right to the same by performing the required annual work, was a sharp and decisive issue in the case, to be determined by the jury. Defendant's evidence tended to show that its grantors and itself had been in possession of the lodes each year from the date of original discovery to the time of trial, and had expended thereon yearly large sums of money in developing and improving the same. These evidential facts, taken in connection with the recitals in the amended location certificates, were clearly pertinent on the question of abandonment and should have been submitted to the jury for their consideration. We have carefully read the abstract

of record, and we fail to find a line, word or syllable, therein, which tends to show an intention on the part of defendant to abandon the original location of any one of the King Solomon group of lodes, unless the mere fact of sinking a new discovery shaft thereon, or filing an amended location certificate thereof, can be so considered. The evidence of defendant's witness Sanderson, a United States Deputy Surveyor employed by defendant to make the alleged amended locations of the King Solomon group, tends clearly to show that in doing so defendant had no intention of abandoning any rights it possessed under the original locations of 1903. We agree with appellee's counsel that in giving an instruction to the jury by a trial judge it is unnecessary for such judge to incorporate therein any reasons to support the same; and we also agree that he may give an arbitrary instruction to the jury to return a verdict for either party, but in either case the instruction will be tested by evidence, proofs and pleadings, as shown by the record, and if the same announces a principal of law which is erroneous, or assumes a fact proven which lacks evidence to sustain it, or by its phraseology withdraws from the consideration of the jury an issue of fact exclusively within their province, then in any or either of such cases an appellate court will not sustain such an instruction. The issue of abandonment was all-important in this case, and the instruction entirely removed it from the consideration of the jury. For the error committed in giving this instruction to the jury the judgment must be reversed.

We are not disposed to consider other questions raised, but as the case will likely be tried again it

may not be amiss to briefly notice one or two other assignments urged by counsel as reversible error. It is insisted by appellant that the court erred in permitting the witnesses Wildhack and Coffelt to testify as to whether or not the located ground was vacant public domain at the time of certain locations. This was clearly prejudicial error, as that question was the ultimate fact upon which the jury were to pass. It cannot be said to be harmless. The questions were directed to a material and sharply contested issue. True, the plaintiff produced other evidence tending to corroborate these witnesses, but the defendant produced evidence strongly tending to disprove the same. There is no guide to inform us as to what weight the jury gave to the conclusions of these two witnesses as against the testimony of defendant's witnesses. When an issue of this character is before the jury for determination we think witnesses should be limited in their testimony to their knowledge of the physical conditions of the ground, based upon personal examination and inspection thereof, what shafts, adits, tunnels, or other mining developments thereon came within their observation, etc. It then becomes the province of the jury, under proper instructions, to determine whether or not the alleged locations were made upon unappropriated public domain. In the case of *Combs v. Agricultural Ditch Co.*, 17 Colo. 146, the following question was propounded and permitted to be answered by the witness, under objection, to wit:

"Q. From your experience as a farmer, and in irrigation in connection with it, is there water enough in that ditch now, or has there ever been for

the last two years, to irrigate the lands which have heretofore been irrigated by that ditch?''

· The court held the ruling to be error and assigned the same as one of the reasons for reversing the judgment. To the same effect: *D. & R. G. R. R. Co. v. Scott,* 34 Colo. 100; *Holy Cross Mining Co. v. O'Sullivan,* 27 Colo. 238. There are some exceptions to this rule, viz: *T. & F. W. R. Co. v. Pulaski Ir. Co.,* 10 Colo. 367, and *Sears v. Seattle Con. R. Co.,* 6 Wash. 227. It appears to us however that the question and answer here considered do not fall within the exception. While on this point we might say that as to the witness Wildhack, the only objection to the question propounded was as follows: ''Objected to by defendant.'' ''Objection overruled.'' ''Defendant excepts.'' As to the witness Coffelt, objection was made to the question as ''being incompetent and called for a conclusion''. The first objection above mentioned, failing to specify the ground thereof, would not be entitled to consideration in this court. The second might be said to be sufficient for consideration on appeal, but we think it lacking as a clear and positive statement of the ground of objection. It has been held time and again by our appellate courts that an objection to the admission of evidence without assigning any reason, or sufficient reason, therefor, does not entitle the party objecting to have the objection considered. *Hindrey v. McPhee,* 11 Colo. C. A. 398; *Armstrong v. Higgins,* 9 Colo. 38.

Error is also predicated upon the court's ruling in permitting the following question and answer to be admitted in evidence on behalf of plaintiff:

''Q. Is that such a showing of a vein and min-

eral in place that a reasonably prudent miner in the district would expend his money and time with expectation of finding ore?

A.   There was such a showing as a man would expend his time.''

The authorities next hereinafter cited sustain the court's ruling in that behalf: *Eureka Co. v. Richmond Co.,* 4 Sawy. 302; *Shoshone M. Co. v. Rutter,* 87 Fed. 801; Wilson v. Harnette, 32 Colo. 172.

The ruling of the court in admitting in evidence the deed to the Troublesome lode from Hopkins to Parker was not error.   We think, however, evidence should have been introduced to explain the mistake, if any, as to the location certificate of the property conveyed not being recorded in the book and at the page to which reference is made in the deed.

For the reasons given, the judgment will be reversed and the cause remanded.

*Reversed and Remanded.*

Decided June 10, A. D. 1912.   Rehearing denied October 14, A. D. 1912.