553 P.2d 99 (1976)
DENVER URBAN RENEWAL AUTHORITY, a body corporate and politic of the State of Colorado, Petitioner-Appellant,
v.
BERGLUND-CHERNE COMPANY, a Colorado Corporation and Elmer A. Johnson, Treasurer of the City and County of Denver, Respondents-Appellees.
No. 75-317.
Colorado Court of Appeals, Div. I.
February 19, 1976.
Rehearing Denied March 25, 1976.
Certiorari Granted May 24, 1976.
*100 John H. Williamson Denver, for petitioner-appellant.
Dawson, Nagel, Sherman & Howard, Raymond J. Turner, Frederick Y. Yu, Denver, for respondent-appellee Berglund-Cherne Co.
Selected for Official Publication.
COYTE, Judge.
This is an eminent domain proceeding. On March 15, 1974, petitioner, the Denver Urban Renewal Authority (DURA), filed a petition in condemnation to acquire two parcels of land which were located within the Auraria Urban Renewal Project and owned by respondent, Berglund-Cherne Company. Following a hearing on the issue of valuation held before a commission of three freeholders, a certificate of ascertainment and assessment determining a total value for the two parcels was filed with the court by the commission, and a rule and order was thereafter entered based upon the certificate.
DURA appeals from the award of $245,800 for the larger parcel only. It advances two grounds of error as the basis of this appeal: (1) That the commission erroneously prevented DURA's appraiser from stating an opinion as to the value of the property based on the income approach to valuation; and, (2) that the award was based on the incompetent testimony of the property owner, who, though not qualified as an expert, was permitted to relate his opinion of the accrued depreciation of the improvements on his property and his estimate of the value of his property based thereon. We affirm.
DURA called as an expert witness, a real estate appraiser whom it had employed *101 to appraise the two parcels and estimate their fair market value. He testified to the effect that the "highest and best use" of the large parcel was that of industrialization, its current use; he testified as to comparable sales of similar properties within adjoining areas; and he offered an opinion of the value of this parcel apart from improvements and considering such factors as location, size, and utility. The appraiser then described an alternate method of valuation. He explained, under direct questioning, that to utilize the income approach to valuation, the rent which the property would command in the open market, i.e., the "economic" or "imputed" rent, is first ascertained. From that figure certain operating expenses are subtracted to obtain net operating income. Net operating income is then capitalized to yield the value of the property as an entity. From that sum is subtracted a value for the land based on comparable sales, and the remainder is the value of the improvements on the land.
At this point in the testimony, counsel for DURA asked the appraiser: "What was your opinion as to the economic rent of this parcel?"
Respondent Berglund-Cherne objected to the question and the objection was sustained by the commission on the grounds that any opinion as to economic rent was necessarily based on inadmissible hearsay. The commission grounded its ruling primarily on the holding of City & County of Denver v. Quick, 108 Colo. 111, 113 P.2d 999, and the limited exception to that holding enacted by the legislature in § 38-1-118, C.R.S.1973. Appellant argues that this reliance was misplaced. We disagree.
It is axiomatic that in a condemnation proceeding, the jury or the commission is charged with arriving at the present market value of the property being taken. The measure of compensation is the value of the whole tract and improvements thereon as it exists at the time of the condemnation, taking into consideration its highest and best use. See Board of County Commissioners v. Vail Associates, Ltd., 171 Colo. 381, 468 P.2d 842. However, evidence of speculative or prospective value is barred as distracting from the proper determination of "how much would the property bring in cash if offered now for sale by one who desired, but was not obliged to sell, and was bought by one who was willing but not obliged to buy." Department of Highways v. Schulhoff, 167 Colo. 72, 445 P.2d 402, quoting Wassenich v. City of Denver, 67 Colo. 456, 186 P. 533.
Consequently, whenever it is desired that the opinion of a witness on the subject of value be submitted in evidence, it is always necessary, whether the witness is offered as an expert or not, to lay some foundation for the introduction of his opinion, demonstrating that he has had the means to form an intelligent opinion derived from an adequate knowledge of the nature and kind of property in controversy and its value. City & County of Denver v. Lyttle, 106 Colo. 157, 103 P.2d 1; Hoover v. Shott, 68 Colo. 385, 189 P. 848; Butsch v. Smith, 40 Colo. 64, 90 P. 61. In Denver v. Quick, supra, the court added the requirement that an expert cannot testify to the elements which went into the formation of his opinion, if they represent hearsay:
"A witness who has given his opinion as to value may state the reasons for his opinion, and he may of course state as such reasons any circumstances which he would be allowed to give in evidence as independent facts; but he cannot under the guise of fortifying his opinion state to the jury any facts which, either because the facts themselves are not relevant or because his knowledge of the facts is entirely based on hearsay, are themselves inadmissible. (emphasis supplied)
Here, in laying the foundation for an opinion of value, DURA's appraiser was asked to describe in depth the income approach to valuation. He testified that an element in reaching an estimate of value *102 under that method was a determination of "economic" or "imputed" rent. He explained that "economic" rent was a conclusion based upon an examination of comparable leased property. In this case he stated he had reviewed multiple rental listings compiled by realtors and received information from lessors and lessees in order to allocate "economic" rent to the subject property. On voir dire by respondent's counsel, he admitted that few leases are recorded and that his opinion of "economic" rent was not based on those properties which he personally managed. In view of this testimony we must concur in the ruling of the commission and hold that the objection was properly sustained. Under the rule in Denver v. Quick, supra, the "circumstance" or element of economic rent is one "reason" for an opinion of value and is inadmissible where knowledge of that "element" or the basis of that "reason" is grounded in hearsay.
Counsel for DURA argues that his question asked for an opinion from the expert witness and this is not covered by the rule in Denver v. Quick, supra, which relates specifically to "facts." We disagree. The rule in Denver v. Quick, supra, refers to the "reasons," "circumstances" or "facts" which fortify the expert's opinion. Clearly, an opinion of value extrapolated from the income approach is based on or fortified by the "circumstance" or "fact" of the assignment of a figure to represent "economic" or "imputed" rent. And where that figure is entirely based on hearsay it is inadmissible. "Conjecture is the vice which bars evidence of speculative uses . . . ." Denver v. Quick, supra.
This holding is consistent with the legislative intent expressed in § 38-1-118, C.R.S. 1973, which provides a narrow and limited exception to the rule of Denver v. Quick, supra:
"Any witness in a proceeding under articles 1 to 7 of this title, in any court of record in this state wherein the value of real property is involved, may state the consideration involved in any recorded transfer of property, otherwise material and relevant, which was examined and utilized by him in arriving at his opinion, if he has personally examined the record and communicated directly and verified the amount of such consideration with either the buyer or seller." (emphasis supplied)
Assuming arguendo that the statute could be read to extend to lease transactions as a transfer of an interest in property, the instant case would not fall under the statutory exception. DURA's appraiser testified that leases are rarely recorded, and that he had relied on information transmitted to a multiple rental listing service. Thus, contrary to the requirement of the statute, he neither examined all the leases nor verified the consideration with the lessor or lessee in each case. Furthermore, since the improvements on the large parcel were owner constructed and owner occupied, and since testimony clearly established that the amenities in the office building far exceeded the amenities in the normal industrial office building constructed for rental purposes, it is questionable whether any so-called comparable leases would be either "material" or "relevant."
DURA argues, in addition, that respondent waived its right to object to the testimony of DURA's appraiser on "economic rent" since earlier it had called him as an adverse witness and had questioned him about the income approach to valuation. Similarly, one of respondent's own expert witnesses had testified to an opinion of value based on the income method of valuation. DURA complains, therefore, that respondent "had his cake and ate it"; that respondent's objection barred the opinion of value of DURA's appraiser based on the income method, while respondent's expert witness was permitted to give his opinion of value using the same method. We disagree that respondent waived its objection.
An attorney must make an objection to testimony by an expert witness where it is demonstrated during his testimony *103 that his opinion rested wholly or chiefly on hearsay evidence, since without objection the evidence becomes consent evidence, which has probative value in support of the expert's opinion of value and may be retained in evidence. Warren v. Waterville Urban Renewal Authority, 235 A.2d 295 (Me.). Having failed to object to the testimony of respondent's expert, DURA cannot now complain when improper testimony is kept from the record by proper objection.
DURA urges that error was committed in permitting the property owner to testify as to the depreciation of the improvements on the large parcel. We disagree. An owner may testify as to his own estimate of the value of his land. Baker Metropolitan Water & Sanitation District v. Baca, 138 Colo. 239, 331 P.2d 511. The weight of his testimony is for the finder of fact. Universal Insurance Co. v. Arrigo, 96 Colo. 531, 44 P.2d 1020.
Appellant relies on the holding in City & County of Denver v. Hinsey, 177 Colo. 178, 493 P.2d 348, to support his position that the witness-owner was incompetent to testify as to the element of depreciation. In Hinsey, however, the court held on review that there was no evidence presented from which the trial court could determine that the witnesses offered were competent to testify. That is not the case here: Mr. Howard Cherne, president and principal stockholder of respondent company, was an experienced builder with knowledge of property and building values, who had constructed the buildings which he was asked to value. As a corporate officer and shareholder, Cherne would be considered an owner and could estimate the value of his real property whether he qualified as an expert or not. Atkinson v. Marquart, 112 Ariz. 304, 541 P.2d 556. Furthermore, among the indicia of competency listed in Hinsey were "residency in the community" and "doing business in the community," both indicia possessed by respondent in this case. We also note that in Board of Directors v. Calvaresi, 156 Colo. 173, 397 P. 2d 877, the court specifically found no error in permitting the landowner-witness to testify as to the depreciation in market value of the condemned tract.
Having found no error in the admission or exclusion of evidence and finding the award supported by competent evidence in the record, the judgment is affirmed.
VanCISE and KELLY, JJ., concur.